UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

SHARON A.-B.,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

———————————————————————

**DECISION AND ORDER**

20-CV-6985S

  1. Plaintiff Sharon A.-B.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

  2. Plaintiff protectively filed her applications with the Social Security Administration on December 4, 2014.  Plaintiff alleged disability beginning June 1, 2014, due to plantar fascial fibromatosis, mild plantar fasciitis, morbid obesity, depression, anxiety disorder, cervical myofascial pain syndrome, and carpel tunnel syndrome disorder.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.  This includes recasting captions from earlier decisions involving this Plaintiff.

3.      On April 18, 2017, ALJ Gretchen Mary Greisler held a hearing at which Plaintiff—self-represented—and Vocational Expert Josiah Pearson appeared and testified.  (R.[2] at 121-55, 102, 1483.)  At the time of the hearing, Plaintiff was 46 years old and had a high school education (R at 111, 1492, 2153).  She had past relevant work as salesperson jewelry (light exertion work) (R. at 111, 1492, 2152).

4.      The ALJ considered the case *de novo* and, on July 19, 2017, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed her first action, challenging the Commissioner's decision.  This action resulted in a Decision and Order issued by Hon. Michael A. Telesca, dated December 23, 2019, remanding the case for further proceedings, Sharon [A.-B.] v. Comm'r, No. 18CV6461, 2019 WL 7048713 (W.D.N.Y. Dec. 23, 2019) (R. at 1522).  Judge Telesca ordered the case remanded (R. at 1522), id.

5.      Judge Telesca ordered reevaluation of opinions offered by treating physicians, Drs. Joseph Hatef and Kim Rickert, and called upon the ALJ to provide good reasons for the assessment of these opinions and to reassess the RFC upon this reevaluated opinion evidence (R. at 1532, 2142), 2019 WL 7048713, at *4.  Judge Telesca concluded that the Appeals Council erred in determining that Plaintiff's additional evidence would not change the outcome of the decision (R. at 1526), id. at *2.  He also ordered remand for the ALJ to weigh the opinions of Plaintiff's treating podiatrist, Dr. Hatef (R. at 1526, 1527-30, 1530-31), id. at *2-3, 4.  Judge Telesca noted that the ALJ also failed to address Dr. Rickert's March 21, 2017, opinion (R. at 1530, 1531), id. at *3, 4.

---

[2]Citations to the underlying administrative record are designated as "R."

Those medical opinions required consideration under the treating physician rule applicable for this pre-March 2017 application (R. at 1531, 1532), id. at *4.

6.     On February 8, 2020, the Appeals Council vacated the ALJ's 2017 decision and directed further administrative proceedings consistent with Judge Telesca's Decision (R. at 1536).

7.     The ALJ conducted a second video hearing on August 6, 2020, where Plaintiff—this time represented by counsel—impartial medical expert Dr. Alvin Stein and vocational expert Christine Spaulding appeared and testified (R. at 2142, 1430-79).  On September 14, 2020, the ALJ issued another decision denying Plaintiff's claim for benefits (R. at 2140).

8.     After this second ALJ decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

9.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 16, 18.)  Plaintiff filed a response on December 1, 2021 (Docket No. 19), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

10.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[3]The ALJ's September 14, 2020, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

11.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

12.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987).

13.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If [s]he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits [her] physical
> or mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider
> [her] disabled without considering vocational factors such as
> age, education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, [s]he has the residual functional capacity to
> perform [her] past work.  Finally, if the claimant is unable to
> perform [her] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

14.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering her physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

15.     Initially and on remand the ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of June 1, 2014.  (R. at 2152, 111, 1492).  At Step Two, the ALJ found that Plaintiff had the following severe impairments: plantar fascial fibromatosis, mild plantar fasciitis, morbid obesity, depression, anxiety disorder, cervical myofascial pain syndrome, and carpel tunnel syndrome disorder.  Id. at 104, 1485, 2145.  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 2145-47, 105-06, 1486-87.

16.     Next, on remand the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff can stand for up to 10 minutes before needing to sit for 10 minutes but retains the ability to remain on task; Plaintiff cannot crouch, crawl, kneel, climb ladders, ropes or scaffolds or work at unprotected heights; Plaintiff can rarely (defined as 15% of the day) stoop and can very rarely (defined as 5% or less of the day) climb stairs and ramps; Plaintiff is able to occasionally reach over shoulder height but can frequently reach in all other directions and handle, finger, and feel; Plaintiff cannot tolerate more than occasional exposure to humidity, wetness or extreme heat or cold; Plaintiff can perform simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes (R. at 2147).

6

17.     This differs from the initial finding, where the ALJ found Plaintiff could perform sedentary work but with different limitations from those found on remand (R. at 107, 1488).  Notably, the ALJ initially found that Plaintiff could stand for up to an hour (rather than merely ten minutes before needing to sit) and could occasionally climb stairs (R. at 107, 1488).

18.     At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work as a jewelry salesperson.  (R. at 2152, 111, 1492.)  On remand at Step Five, the ALJ found that prior to August 28, 2020, the transferability of Plaintiff's skills was not material because under the Medical-Vocational Rules Plaintiff was not disabled until she reached a different age category on August 28, 2020 (R. at 2153).  After August 28, 2020, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform (R. at 2153).  Given additional limitations that eroded unskilled sedentary occupational base, the ALJ posed hypotheticals to the vocational expert for claimant similar in age, education, work experience, skills, and RFC to Plaintiff. The expert opined that this claimant could work as document preparer, sorter, and addresser (R. at 2154).

19.     Accordingly, the ALJ found that Plaintiff was not disabled, through June 30, 2019, for her disability application and through August 28, 2020, for her supplemental security income application.  (R. at 2154-55.)

20.     At issue is Plaintiff's eligibility for benefits from the application date of December 4, 2014, through August 28, 2020 (see R. at 2154).

21.     Plaintiff argues that the RFC determination is not supported by substantial evidence because of how the ALJ inappropriately weighed the opinion of experts and the

7

independent medical expert and thus does not have substantial evidence to support the RFC and the Step Five hypotheticals (Docket No. 16, Pl. Memo. at 21-26, 27-28).  For the reasons that follow, this argument is unavailing.

22.     Although Judge Telesca's remand called for the ALJ's reconsideration of the opinions of Drs. Hatef and Rickert, the ALJ also assessed other medical opinions in the record in rendering the decision at issue.

23.     Plaintiff noted that the ALJ relied upon the opinion of Dr. Alvin Stein, the impartial medical expert; the consultant Dr. Justine Magurno; treating physician Dr. Beth Dollinger; and Dr. Hatef's 2020 opinion (Docket No. 16, Pl. Memo. at 21; R. at 2150-51). The ALJ gave great weight to these opinions (R. at 2150-51).

24.     Plaintiff sees the ALJ's analysis was "deeply flawed" in weighing these opinions (Docket No. 16, Pl. Memo. at 21).

25.     This Court first reviews the medical sources relied upon by the ALJ then consider how the ALJ applied the opinions of treating physicians, Drs. Hatef and Rickert.

26.     Impartial medical examiner Dr. Stein testified under oath that Plaintiff could not remain on her feet for prolonged periods of time (R. at 1437, 1440, 1437-61; Docket No. 16, Pl. Memo. at 7).

27.     Dr. Stein reviewed Exhibit 41F (R. at 1734-74) from the treatment records, noted differences in the doctors' evaluation of Plaintiff's functional capacity, and agreed with the conclusion of podiatrist Dr. Hatef from March 28, 2018, rather than the opinion of her neurosurgeon, Dr. Rickert, on April 5, 2018 (R. at 1440, 1442, 1740, 1739; Docket No. 16, Pl. Memo. at 7).

28.     Dr. Hatef found Plaintiff was very limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs (R. at 1740).  Dr. Rickert, however, found Plaintiff was moderately limited in walking, standing, sitting, and climbing stairs, but very limited in lifting, carrying, pushing, pulling, bending (R. at 1739).

29.     Dr. Stein agreed with Dr. Hatef because Plaintiff "had a lot of attention to the feet" especially with Plaintiff's obesity (R. at 1440).  Dr. Stein also agreed with Dr. Hatef's postural limitations (R. at 1439-49, 1442, 1445-49, 2147).  Dr. Stein then opined that Plaintiff's other medical problems did not appear severe that would disable her more than her morbid obesity and the problem with her feet (R. at 1440).

30.     Dr. Stein did not find any impairment of her neck functionality (R. at 1453-54; Docket No. 18, Def. Memo. at 8).

31.     Dr. Stein concluded that Plaintiff could perform a range of sedentary work, including walking for 30 minutes at a time for up to 2 hours per day; never kneeling, crouching, crawling, or climbing ladders; very rarely climb ramps or stairs; infrequently stooping or bending; frequently reaching from waist height and occasionally reaching above the shoulder (R. at 1439-40, 1442, 1447-50, 1454-56; Docket No. 18, Def. Memo. at 6-7).

32.     The ALJ gave great weight to Dr. Stein's opinion because (1) the doctor's review of the entire record, (2) his program knowledge, (3) and the opinion's consistency with the record (R. at 2150).

33.     Plaintiff disputes whether Dr. Stein reviewed the record, with the ALJ pointing out evidence Dr. Stein claimed was not in the record (Docket No. 16, Pl. Memo. at 23, 8; R. at 1443-44, 1446).  She next disputes Dr. Stein's neck range of motion finding

9

(Docket No. 16, Pl. Memo. at 23-24).   Plaintiff finally questions the thoroughness of Dr. Stein's assessment (id. at 24).

34.     Defendant responds that Dr. Stein testified that he "thoroughly" reviewed the record and Defendant concludes that Plaintiff's bald contrary claim lacks merit (Docket No. 18, Def. Memo. at 7; R. at 1437).

35.     Dr. Stein testified under oath that he thoroughly reviewed Plaintiff's record (R. at 1437).   There is no basis to doubt Dr. Stein's testimony, with Plaintiff essentially calling for a credibility assessment.   "Generally, it is the function of the ALJ, not the reviewing court, to appraise the credibility of witnesses," Tankisi v. Comm'r, 521 F. App'x 29, 35 (2d Cir. 2013) (summary Order), citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (the function of the Commissioner, not the court, to resolve evidentiary conflicts and to appraise the credibility of witnesses).   The two points Plaintiff argues were omissions from the record not considered by Dr. Stein were more his preference that Plaintiff be examined independently rather than rely upon the reports in the record (R. at 1444, 1446).

36.     Defendant points out Dr. Stein's agreement with Dr. Hatef on postural limitations and argues those limits were included in the RFC (Docket No. 18,  Def. Memo. at 8; R. at 2147).

37.     Next, Plaintiff disputes the opinion of consulting examiner Dr. Magurno (Docket No. 16, Pl. Memo. at 25-26, 3).  Again, the ALJ gave great weight to this opinion because it was supported by Dr. Magurno's examination findings and its consistency with the record (R. at 2150).

38.     Dr. Magurno opined Plaintiff had moderate limitations in reaching, pushing, and pulling (R. at 561).  Defendant notes Plaintiff did not object to this opinion (Docket No. 18, Def. Memo. at 11).

39.     Plaintiff argues that Dr. Magurno did not provide an opinion on her ability to stand, walk, or sit (Docket No. 16, Pl. Memo. at 25).   Dr. Magurno's opinion predates Dr. Rickert's January 2016 second neck surgery and subsequent surgery to remove neck hardware (R. at 1151, 1153; Docket No. 16, Pl. Memo. at 25).   Plaintiff argues that she had subsequent issues (neck pain) following those procedures (Docket No. 16, Pl. Memo. at 25-26; R. at 1392, 1394, 1678, 1680, 1702, 1705).

40.     Defendant retorts that Dr. Magurno did not discuss Plaintiff's ability to stand, walk, or sit was a "red herring" because the ALJ could rely upon other medical opinions on those functions (Docket No. 18, Def. Memo. at 12, 11).

41.     As for the medical evidence after Dr. Magurno's opinion, Defendant replies that Plaintiff did not meet her burden of showing that she required additional limitations (id. at 12).

42.     On April 4, 2016, Dr. Dollinger reported that Plaintiff could lift or carry up to 20 pounds continuously (R. at 693).  Dr. Dollinger found that Plaintiff could stand for an hour at one time or for entire workday and should never climb ladders but occasionally climb stairs (R. at 694, 696).  The ALJ gave this opinion great weight (R. at 2150).

43.     Plaintiff objects that Dr. Dollinger did not see Plaintiff after 2015 (Docket No. 16, Pl. Memo. at 26).

44.     Defendant reiterates the arguments for the ALJ's consideration of Dr. Magurno's opinion (for example, the post-opinion medical record) for Dr. Dollinger's opinion (Docket No. 18, Def. Memo. at 10-13, 10 n.3).

45.     Defendant rests upon Dr. Stein's findings as supporting the ALJ's determinations despite the omissions or timing of Drs. Magurno and Dollinger's opinions (id. at 12, 13).

46.     In sum, the ALJ has substantial evidence for reliance upon the opinions she cited in finding Plaintiff's RFC.  These opinions are consistent.

47.     Plaintiff also objects to the ALJ's singular reliance on Dr. Hatef's 2020 opinion (Docket No. 16, Pl. Memo. at 26; R. at 2136).  There, Dr. Hatef found that Plaintiff was very limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs (R. at 2136) but made no finding as to her ability to sit.  The doctor noted that Plaintiff was unable to bear weight for more than 30 minutes at a time (R. at 2136).

48.     The ALJ gave Dr. Hatef's 2020 opinion (R. at 2136) great weight because of the doctor's longitudinal treatment history with Plaintiff, the opinion was in the doctor's specialty of podiatry, and the opinion's consistency with the record (R. at 2150).

49.     Plaintiff observed that the ALJ did not mention Dr. Hatef's March 28, 2018, opinion (R. at 1740) which found the same level of impairment prior to the 2020 opinion (Docket No. 16, Pl. Memo. at 26).  In 2018, Dr. Hatef found that Plaintiff remained very limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs but did not state a finding as to her ability to sit (R. at 1740).

50.     Dr. Stein adopted Dr. Hatef's 2018 opinion in forming his opinion (R. at 1440, 1442), in an opinion that the ALJ later gave great weight (R. at 2150).

51.     Defendant responds that Plaintiff has not shown how Dr. Hatef's 2018 opinion changed the outcome (Docket No. 18, Def. Memo. at 14).

52.     Comparison of Dr. Hatef's 2018 and 2020 opinions (R. 1740, 2136) shows that they are consistent.  Both found that Plaintiff was very limited in walking, standing, lifting, and climbing stairs and Plaintiff is unable to bear weight for 30 minutes at a time.

53.     The ALJ granted great weight for the latter opinion because Dr. Hatef treated Plaintiff since 2014 (R. at 2150).  Express reference to the 2018 opinion is not required because (as Defendant argues) Plaintiff has not shown how the disability determination would differ if the 2018 opinion was discussed (see Docket No. 18, Def. Memo. at 14).  Failure to mention the 2018 opinion does not change the outcome determining Plaintiff's disability.

54.     Plaintiff's remaining arguments required this Court delve into the various medical opinions, beyond the opinions of Drs. Hatef and Rickert required by Judge Telesca's remand.  Addressing first Dr. Hatef, presented in those opinions is the degree of impairment Plaintiff suffers in her ability to stand for prolonged periods due to her repeated heel surgeries and pain.

55.     The ALJ gave varying degrees of weight to Dr. Hatef's previous opinions. On October 13, 2014, Plaintiff reported to Dr. Hatef that her right heel pain following excising a right heel spur with increased left heel pain.  Plaintiff wished to return to work and Dr. Hatef allowed her to return with limited hours and duties (R. at 445; Docket No. 18, Pl. Memo. at 9.)  The ALJ gave this opinion partial weight because it was vague as to what limited duties Plaintiff could perform (R. at 2151).

56.     Plaintiff also noted that "in discussing earlier similar opinions from Dr. [Hatef], the ALJ felt that they were insufficiently explained" (Docket No. 16, Pl. Memo. at 26; R. at 2151, 445 (October 13, 2014, treatment note)).  That treatment note (R. at 445) briefly reviewed Plaintiff 2014 treatment plan where Dr. Hatef advised Plaintiff to return to work with limited hours and duties without specifying further these limitations.

57.     Briefly reviewing his treatment notes, on March 21, 2016, Dr. Hatef found that Plaintiff frequently experienced pain severe enough to interfere with attention and concentration and the quality of her sleep (R. at 937).  Plaintiff would be absent from work more than four days per month (R. at 937).  The ALJ gave partial weight to this opinion because there is no explanation that cites to evidence to support the assessment pertaining to absences and it was unclear the cause of her potential absences (R. at 2151).

58.     On July 14, 2016, Dr. Hatef reported that Plaintiff suffered from consistent ankle pain, limited to standing for 30 minutes and had severe pain (R. at 1003, 1004).  Dr. Hatef also opined that Plaintiff needed to elevate her legs frequently during a workday (R. at 1004).   Dr. Hatef commented that Plaintiff had multiple foot surgeries and still suffered severe pain, concluding that Plaintiff cannot function in retail "on any level as far as being on her feet for any extended period" (R. at 1004).  The ALJ only gave this opinion partial weight to this opinion because it was unclear to the ALJ what "frequently" meant and the need to elevate her legs during the workday was not consistent with the evidence (R. at 2151).

59.     On July 21, 2016, Dr. Hatef wrote that Plaintiff was a long-term patient who had two surgeries on each foot.  Plaintiff then was unable to ambulate for more than an

hour or stand for more than an hour without considerable pain.  Dr. Hatef saw "no reason to believe the situation will improve."  The doctor concluded that Plaintiff would be unable to return to her current job or perform work that requires weightbearing for any extended period.  (R. at 1072, 1356 (copy).)  The ALJ gave this opinion good weight, finding that it was consistent with the record (R. at 2151).

60.     Plaintiff replies that the 2020 opinion added a limitation against working in a competitive setting for 80 hours per month (Docket No. 19, Pl. Reply citing R. at 2136).  This limitation was not noted in 2016 (cf. R. at 1740).

61.     Thus, the ALJ had substantial evidence from consideration of Dr. Hatef's medical evidence and opinions to find an RFC for sedentary work with restrictions on the amount of standing and walking (see R. at 2147).  The ALJ met the remand mandate from Judge Telesca to evaluate all of Dr. Hatef's opinions (R. at 1532).

62.     Next, Plaintiff objects that the ALJ did not address restrictions on her sitting (Docket No. 16, Pl. Memo. at 28).  She testified that she had limitations sitting due to her neck, stating she could sit for about 10 minutes before requiring to change positions, that she always had to move and felt twitchy (id.; R. at 1466-67, 2148).

63.     Dr. Rickert treated Plaintiff's neck.

64.     The ALJ gave little weight to Dr. Rickert's opinions, finding these opinions were vague (R. at 2151, 991).

65.     First, on April 15, 2016, Dr. Rickert wrote a disability screening form and opined that Plaintiff was very limited in her ability to lift and carry and bend, push, and pull (R. at 893-94; Docket No. 16, Pl. Memo. at 6).  Dr. Rickert, however, did not find any

evidence of limitation for Plaintiff sitting, walking, or standing (R. at 894; Docket No. 16, Pl. Memo. at 6).

66.     On July 6, 2016, Dr. Rickert wrote a note declaring Plaintiff was out of work until further notice (R. at 991) but did not state the reason or condition that precluded her work.

67.     On July 12, 2016, Dr. Rickert wrote a treatment statement in support of Plaintiff's claim for disability, discussing Plaintiff's two neck surgeries, concluding that Plaintiff was unable to return to her current work and was not likely "able to do another job secondary to the difficulty with using her arms and frequent falls" (R. at 1071). The ALJ gave little weight to this letter because it seemed vague because it was unclear what the doctor meant by Plaintiff's "difficulty" (R. at 2151).

68.     On March 21, 2017, Dr. Rickert completed a medical source statement (R. at 1383). There, the doctor found that Plaintiff had no evidence of limitation for sitting and standing, moderate limitation in standing, and very limited in lifting and carrying and pushing, pulling, and bending (R. at 1383). Dr. Rickert opined that Plaintiff could not work (R. at 1383; see Docket No. 19, Pl. Reply Memo. at 4). Dr. Rickert concluded that Plaintiff could not move her neck or arms well enough do more than activities of daily living (R. at 1383).

69.     The ALJ gave little weight to this opinion because part of the opinion is beyond Dr. Rickert's specialty as a neurosurgeon. The ALJ then found that a total prohibition on lifting and standing was inconsistent with Plaintiff's course of treatment and evidence in record. (R. at 2151.) Defendant later argues that Dr. Rickert did not opine moderate limitation in sitting (Docket No. 18, Def. Memo. at 16 n.4).

70.     As later discounted by Dr. Stein (R. at 1453), on April 5, 2018, Dr. Rickert next found Plaintiff had moderate limitations in sitting, walking, standing, and climbing stairs (and very limited in lifting, carrying, pushing, pulling, bending, and using her hands) (R. at 1739).  Dr. Rickert continued to conclude that Plaintiff was not able to work due to her physical limitations (R. at 1739; see Docket No. 19, Pl. Reply Memo. at 4).  Dr. Stein also "opined (consistent with the opinions of Drs. Magurno and [Dollinger])" there was nothing in the record that suggested Plaintiff's neck impaired her functionality save a reaching limitation (Docket No. 18, Def. Memo. at 12; R. at 1453-54).

71.     Tracking Dr. Rickert's opinions found that there was no evidence of limitations of sitting on April 2014 (R. at 894) or March 2017 (R. at 1383; see Docket No. 18, Def. Memo. at 16 & n.4), becoming moderately limited in sitting on April 2018 (R. at 1739).

72.     A review of the medical record does not find other opinions that note limitations on Plaintiff's ability to sit.  For example, Dr. Dollinger found in April 2016 that Plaintiff could sit for 8 hours in a workday (R. at 694); this is months after Dr. Rickert's January 2016 neck surgery, the basis for Plaintiff's current claim for a sitting limitation. Dr. Hatef's reports also did not note whether Plaintiff had a limitation in sitting (R. at 1738, 1740, 2136).

73.     Even accepting Dr. Rickert's finding of moderate limitation in sitting, that does not preclude the ability to perform sedentary work, Carroll v. Colvin, No. 13CV456, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) (Skretny, C.J.) (Docket No. 18, Def. Memo. at 16 n.4).  Plaintiff has not met her burden of proving limitations in her sitting that establish her disability.

74.    The ALJ thus had substantial evidence supporting excluding a sitting limitation.

75.    The medical evidence provided substantial evidence for the ALJ's weighing of the opinions that she gave great weight and supported her RFC finding.  The RFC was posed as hypotheticals to the Vocational Expert who identified sedentary occupations the hypothetical claimant like Plaintiff could perform factoring in reduced range of motion of the neck (R. at 1469-75).  Thus, Plaintiff's argument of error at Step Five (Docket No. 16, Pl. Memo. at 27-28) is rejected and her Motion for Judgment on the Pleadings (Docket No. 16) is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        March 28, 2022
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge